# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DANIELA POULTON, et al., | ) | CASE NO. 5:22-cv-251 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| SPECIALIZED LOAN SERVICING, LLC, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is defendant's motion to dismiss plaintiffs' complaint. (Doc. No. 6 (Motion); *see* Doc. No. 1 (Complaint).) Plaintiffs oppose the motion (Doc. No. 8 (Response)), and defendant has replied. (Doc. No. 11 (Reply).) For the reasons that follow, defendant's motion is DENIED.

## I.    BACKGROUND

Plaintiffs, Daniela and Charles A. Poulton (the "Poultons"), bring this action against defendant, Specialized Loan Servicing, LLC ("SLS"), in connection with the servicing of a loan (the "Loan"). On August 26, 2005, the Poultons executed a promissory note (the "Note") in the amount of $81,266.00 and executed a mortgage on property they own in Stow, Ohio. (Doc. No. 1 ¶¶ 1–3; Doc. No. 1-1 (Note and Mortgage).) In 2009, the Poultons suffered a financial setback and sought relief from non-party E*Trade Financial, the servicer of the Loan at the time, in the form of a loan modification. (Doc. No. 1 ¶ 30.) The modification acceptance letter (the "Modification"), executed by the Poultons in November 2009, set forth the following terms:

- The new interest rate will be 3.25% for 24 months.
- The first modified payment will be due on November 27, 2009 in the amount

of $646.46.

- All currently outstanding late fees will be waived.
- Any and all other terms and conditions of the [Loan] not specifically mentioned in this letter will remain unchanged.
- All funds collected for the loan modification are non-refundable and will be applied to your account balance.

(Doc. No. 1-3 (Modification), at 2[1]; *see* Doc. No. 1 ¶ 32.)

Plaintiffs allege that, on November 30, 2009, E*Trade Financial prepared a worksheet titled "Loss Mitigation Modifications" (the "Worksheet"), purportedly comparing the terms of the original Note to the Modification. (*Id*. ¶ 34; *see* Doc. No. 1-4 (Worksheet).) According to this unsigned and unexecuted document, neither the Note nor the Modification provided for a balloon payment. (Doc. No. 1-4, at 2; *see* Doc. No. 1 ¶ 35.)

On May 5, 2012, the Note was assigned to non-party UMB Bank, and SLS became the servicer of the Note at that time. (Doc. No. 1 ¶¶ 5–7; *see* Doc. No. 1-2 (Notice of Assignment).) The Poultons continued to remit all monthly payments under the terms of the Loan, as modified, through the end of the Loan's term. Upon maturity of the Loan, SLS claimed that the Poultons still owed $27,314.76 in unpaid principal. (Doc. No. 1 ¶¶ 36–37.) The Poultons allege that, had SLS properly implemented and/or applied their payments to the Loan, or properly amortized the Loan, the Loan would have been paid in full as of the maturity date. (*Id*. ¶¶ 39–40.)  The Poultons made numerous attempts to contact SLS to ascertain why there was an outstanding balance. These attempts proved fruitless, as SLS continued to maintain that there was a pending balance without providing any further explanation. (*Id*. ¶ 41.) Unable to make headway with SLS, the Poultons

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

retained counsel. (*Id.* ¶ 42.)

On August 11, 2021, the Poultons, through counsel, sent a correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" and requests for information pursuant to 12 C.F.R. § 1024.36 (hereinafter "RFI #1"). (Doc. No. 1 ¶ 43; Doc. No. 1-5 (RFI #1).) In their request, the Poultons sought thirteen categories of information, including SLS's servicing notes, all correspondence with the Poultons, and "[a]n exact reproduction of the life of loan mortgage transaction history for this loan from the contract system of record from your electronic software program for this loan." (Doc. No. 1-5, at 2.)

SLS received RFI #1 on August 16, 2021, and formally responded in a written correspondence dated August 23, 2021. (Doc. No. 1 ¶ 46; Doc. No. 1-6 (RFI #1 Response), at 3.) As part of its response, it agreed to provide the Poultons with copies of the Note, Mortgage and Modification; SLS' Notice of Servicing Transfer; the Payoff Statement; and SLS' Payment History and Transaction Codes. (Doc. No. 1-6, at 3.) SLS declined to produce certain portions of the requested information because it determined that certain requests sought "an unreasonable volume of documents or information[,]" contained confidential, proprietary, or privileged information, or were otherwise "unduly burdensome." (*Id.* at 4.)

On November 1, 2021, the Poultons sent SLS, through counsel, a correspondence captioned "Notice of error pursuant to 12 C.F.R. §§ 1024.35(b)(5) and/or (11) for failing to properly servicing [sic] the loan so as to create an undisclosed balloon payment and for otherwise imposing an undisclosed balloon payment; notice of errors pursuant to 12 C.F.R. §§ 1024.35(b)(11) for sending incorrect periodic billing statements for the loan" to SLS via certified

U.S. Mail (hereinafter "NOE #1"). (Doc. No. 1 ¶ 50; Doc. No. 1-7 (NOE #1), at 2.)[2] In NOE #1, the Poultons advised SLS that they believed that it had erred by "failing to properly servic[e] the loan so as to create an undisclosed balloon payment and for otherwise imposing an undisclosed balloon payment[.]" (Doc. No. 1-7, at 2; *see* Doc. No. 1 ¶ 50.)

NOE #1 was received by SLS on November 8, 2021, and SLS' formal response followed on December 6, 2021. (Doc. No. 1-8 (NOE #1 Response); *see* Doc. No. 1-7 (Package Tracking), at 8; Doc. No. 1 ¶ 53.) In its response, SLS stated that no errors occurred because:

> SLS records indicate that the remaining balance due on the above referenced second mortgage loan account is not due to any balloon payment. Per the terms of original Note . . . it states in part:
>
> "*If on September 1, 2020 I still owe amounts under the note, I will pay all those amounts, in full, on that date*."
>
> The 2009 loan Modification executed with prior servicer E-Trade states in part:
>
> "*Any and all other terms and conditions of the above loan not specifically mentioned in this letter will remain unchanged*."
>
> As such, SLS is unable to comply with your request to remove the unpaid principal balance due on the account.

(Doc. No. 1-8, at 3 (emphasis in correspondence); Doc. No. 1 ¶¶ 53–54.) SLS' response further provided that SLS had "researched the account and SLS records indicate that the remaining unpaid principal balance described in your dispute is not in error." (Doc. No. 1-8, at 3.)

On February 8, 2022, the Poultons sent SLS a second notice of error captioned, in part, "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request

---

[2] While paragraph 50 of the complaint alleges that NOE #1 was mailed on August 11, 2021, the same day the RFI #1 was sent, it is clear from the documentation referenced in and attached to the complaint that NOE #1 was mailed on November 1, 2021. (*See* Doc. No. 1-7, at 2.)

for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E)" (hereinafter "NOE #2").[3] (Doc. No. 1 ¶ 59; Doc. No. 1-9 (NOE #2), at 2.) The complaint is silent as to whether SLS responded to NOE #2. What is clear is that seven days later, on February 15, 2022, the Poultons filed the present action in federal court.

## II. STANDARD OF REVIEW

SLS requests dismissal of the complaint under Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874–75 (W.D. Mich. 2014) ("A court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." (internal quotation marks and citation omitted)); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[.]" (internal quotation marks and citation omitted)).

---

[3] NOE #2 is dated February 4, 2022. (Doc. No. 1-9, at 2.)

5

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In deciding a motion to dismiss under Rule 12(b)(6), the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co*., 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss (citations omitted)).

### III.  DISCUSSION

The complaint raises four causes of action. Count One alleges SLS failed to properly respond to RFI #1 in violation of the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; Count Two also asserts a violation of RESPA and is related to SLS' response to NOE #1; Count Three alleges multiple violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and Count Four raises a state law claim under the Ohio Residential Mortgage Loan Act ("RMLA"), Ohio Rev. Code § 1322.01 *et seq.* (*See generally* Doc. No. 1.)

### A.  Count One: the RESPA and the Response to RFI #1

"Congress enacted RESPA 'in part to provide more effective advance disclosure to home buyers and sellers of settlement costs, and in response to abusive practices in the real estate settlement process.'" *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 163 (6th Cir. 2015) (quoting *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (further quotation marks and citation omitted)). RESPA provides that a borrower may submit a "qualified written request" or "QWR" to their loan servicer requesting "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). A QWR must identify the loan and include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Section 2605 imposes duties on the servicer to respond to a QWR from a borrower. A servicer must acknowledge such an inquiry within five business days of receiving the request (12 U.S.C. § 2605(e)(1)(A)) and substantively respond within 30 business days. 12 U.S.C. §

2605(e)(2). A servicer may substantively respond to a QWR by:

> (1) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

> (2) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1)(i) & (ii); *see* 12 U.S.C. § 2605(e)(2)(C)(i). Compliance with requests that a servicer "reasonably determines" to be "overbroad or unduly burdensome" is "not required." 12 C.F.R. § 1024.36(f)(1).

SLS does not dispute that RFI #1 qualifies as a QWR for purposes of the RESPA, and the Poultons do not aver that SLS' substantive response was untimely. Instead, the Poultons allege that SLS' response was incomplete because SLS "failed to provide a full transaction history for the Loan, as requested, instead only providing a history containing transactions for the loan dating back to May 21, 2012." (Doc. No. 1 ¶ 47.) They explain that they "had, on numerous occasions, expressed concern about the accounting of the Loan since the Modification, [such that] SLS knew or should have known that a transaction history dating back at least as far as the implementation of the Modification was of utmost importance." (*Id.* ¶ 48.) According to the Poultons, "[h]ad SLS provided a full accounting[,]" they "may have been more readily able to determine why there was an unpaid principal balance . . . owed upon the maturity of the Loan[.]" (*Id.* ¶ 49.)

In its motion to dismiss, SLS contends that it fully complied with its obligations under the RESPA in responding to RFI #1. SLS argues that it was not obligated to provide a full accounting for the Loan because the Poultons never requested it. (Doc. No. 6, at 8–9.) Rather, SLS notes that the Poultons requested only an "exact reproduction of the life of loan mortgage transaction history

8

. . . *from your electronic software program* for this loan." (*Id.* at 9 (citing Doc. No. 1-5, at 2–3 (emphasis added by SLS)).) Because SLS' electronic software program extends only back as far as the date it acquired the servicing duties on the Loan, it insists that it was not obligated to provide anything further.

The Poultons respond by suggesting that, even if the request had not specifically asked for documents showing the entire transaction history of the Loan (which they say it did), it should have been evident from the parties' earlier communications, as well as the language of the subsequent NOE #2, that the Poultons were challenging the treatment of loan payments following the Modification. (Doc. No. 8, at 10 (citing Doc. No. 1-9); *see* Doc. No. 1 ¶¶ 79, 81.) The Court agrees with SLS that NOE #2, which was sent seven months *after* RFI #1, cannot be relied upon to test the reasonableness of SLS's response to RFI #1. But the fact remains that the Poultons did request the entire transaction history of the loan, even if they were unaware that SLS' computer program only contained the Loan's history as of May 2012. (*See* Doc. No. 1-5, at 2.) Moreover, at this stage of the proceedings, the Court cannot determine whether the parties' *prior* communications would have informed SLS as to the parameters of the Poultons' request. (*See* Doc. No. 1 ¶ 81 ("[T]he Poultons had, on numerous occasions, expressed concern about the accounting of the Loan since the Modification[.]").)

The Poultons also note that SLS failed to provide the requested "servicing notes" for the Loan. (Doc. No. 8, at 11.) SLS complains that the Poultons did not plead this fact and, in any event, mortgage servicers are not required to respond to overbroad or unduly burdensome requests. (Doc. No. 11, at 2–3.) While a party may not amend a pleading through its briefing, a plaintiff need not plead each and every fact upon which a claim is based. *See 16630 Southfield Ltd. P'ship Flagstar*

9

*Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (a plaintiff need only "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing" (quoting *Iqbal*, 556 U.S. at 678)). And while SLS maintains that many of the requests—including the request for "servicing notes"—was overbroad and/or unduly burdensome, such a determination cannot be made in a vacuum without a sufficiently developed record.

Ultimately, the Court finds that a determination of the reasonableness of SLS' response to RFI #1 cannot be made on a Rule 12(b)(6) motion. SLS is free to revisit these issues on summary judgment. SLS' motion to dismiss Count One is denied.

### B.  Count Two: RESPA and the Response to NOE #1

Count Two alleges that SLS failed to properly respond to NOE #1. "RESPA—as implemented by Regulation X, 12 C.F.R. § 1024 (2015)—allows borrowers to notify mortgage servicers of possible account errors." *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905, 907 (11th Cir. 2016) (citing 12 C.F.R. § 1024.35). Once properly notified, a servicer must respond in one of two ways:

(A) Correct[] the error or errors identified by the borrower and provid[e] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conduct[] a reasonable investigation and provid[e] the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

"The key requirement is that the loan servicer conduct a 'reasonable investigation,'

meaning, at a minimum, a 'search or inquiry . . . to test the validity of [the borrower's] complaints.'" *Poynter v. Rushmore Loan Mgmt. Servs. LLC*, No. 1:20-cv-247, 2022 WL 787870, at *6 (S.D. Ohio Mar. 15, 2022) (quoting *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 724 (S.D. Ohio 2014)). "Merely providing documents and a statement that there are no errors is not enough. *Id.*

In its motion to dismiss this count, SLS argues that it fully and completely responded to NOE #1 by determining, after a reasonable investigation, that the remaining balance it attributed to the Poultons was due and owing on the Loan. It points to its response wherein it quoted the original Loan providing that if any remaining balance existed at the termination of the Loan, the Poultons were liable to pay that amount, as well as the Modification that preserved all terms of the Loan not otherwise altered by the Modification. (Doc. No. 6, at 11.) SLS insists that the Poultons simply disagree with SLS' determination that no error occurred and that mere disagreement or confusion is not a ground for a claim under RESPA. (*Id.* at 11–12 (citing *Bauer v. Roundpoint Mortg. Serv. Corp.*, No. 18-cv-3634, 2018 WL 5388206, at *5 (N.D. Ill. Oct. 29, 2018) (further citation omitted)).)

But the Poultons have alleged more than a mere disagreement with SLS' response to NOE #1. They allege that SLS failed to conduct a reasonable investigation into the errors they identified in NOE #1; namely, that SLS improperly serviced the Loan, as modified, resulting in an impermissible balloon payment. (Doc. No. 1 ¶¶ 97, 102.) They claim that SLS "merely relied upon a clause in the Note stating that all unpaid amounts under the Loan are due and payable upon the maturity of the Loan without any consideration as to whether there being an unpaid principal balance of $27,314.76 was proper." (*Id.* ¶ 104.) According to the Poultons, any "reasonable

investigation" would have resulted in SLS fully responding to the Poultons' concern that the balance, itself, was in error, rather than just advising that if there is a balance it must be paid per the original terms of the Loan. (*See id.* ¶ 106.)

Once again, the Court finds that it cannot, at this early stage in the proceedings, decide whether SLS is entitled to judgment, in its favor, under the RESPA. While SLS maintains that it conducted a reasonable investigation, the details or scope of that investigation are entirely unknown. It may be that SLS reviewed documents showing how the Poultons' payments were applied to the Loan and/or how the Loan was amortized and properly determined from this review that there was a remaining balance.[4] Unfortunately, at this point in the litigation, the Court has only SLS' unsupported assurance that this investigation took place, that it was reasonable, and that it properly led to the correct determination that the resulting balance was not reached in error.[5] *See, e.g., Becker v. PennyMac Loan Servs., LLC*, 583 F. Supp. 3d 1090, 1100 (S.D. Ohio 2022) ("Whether a given investigation was reasonable strikes the Court as an inquiry ill-suited to resolution at the motion to dismiss stage.") Count Two survives SLS' motion to dismiss.

### C.  Count Three: the FDCPA

The FDCPA prohibits "debt collectors" from collecting on a debt by using false, deceptive,

---

[4] For example, the Poultons allege that SLS should have reviewed the Loss Mitigation Modifications Worksheet that was purportedly prepared by E*Trade Financial at the time of the Modification and shows that at no time during the history of the Loan did it make provisions for a balloon payment. (Doc. No 8, at 12 (citing Doc. No. 1-4).) At this point, it is unclear whether SLS reviewed this unsigned/unexecuted document or even had access to it. Such questions can be resolved during discovery.

[5] Such a determination is perplexing given the seemingly conflicting conclusion reached by SLS that there was a significant outstanding balance but there was no balloon payment. (*See* Doc. No. 1-8, at 3 ("the remaining balance due on the . . . loan account is not due to any balloon payment"). *Contra. Black's Law Dictionary* 1165 (8th ed. 2004) (defining "balloon payment" as a "[a] final loan payment that is usually much larger than the preceding regular payment and that discharges the principal balance of the loan"). Again, the Court expects this to be a subject of discovery and a possible topic on summary judgment.

or misleading statements, 15 U.S.C. § 1692e, or otherwise engaging in unfair practices, § 1692f. It is construed broadly in order to give effect to its purpose. *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448 (6th Cir. 2014). The Poultons allege that SLS violated § 1692e by failing to properly service the Loan so as to create an unwarranted and improper balloon payment and then "falsely representing such amounts as due and owing thereby manufacturing a default and threatening to initiate foreclosure proceedings." (Doc. No. 1 ¶ 118.) They further allege that SLS violated § 1692f by demanding the improper balloon payment, manufacturing a default, and threatening to initiate foreclosure proceedings. (*Id*. ¶¶ 119–20.)

To prevail on a FDCPA claim, a plaintiff must prove that he (1) is a "consumer" as defined in the FDCPA; (2) that the "debt" arises out of a transaction which is "primarily for personal, family, or household purposes"; (3) the defendant is a "debt collector" as defined in the FDCPA; and (4) defendant has violated one of the enumerated prohibitions in the FDCPA. *Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 766 (S.D. Ohio 2013) (citations omitted). SLS' motion is limited to challenging the fourth element.

"The [FDCPA] does not make actionable every false representation. The statement must be material, which is to say capable of influencing the consumer's decision-making process." *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 894 (6th Cir. 2020) (citing *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596–97 (6th Cir. 2009)). Moreover, when determining whether a statement is false or misleading and, therefore, violates § 1692e, the Court "employs an objective, 'least-sophisticated-consumer' test." *Miller*, 561 F.3d at 592 (quoting *Kistner v. Law Offs. of Michael P. Margelefsky LLC*, 518 F.3d 433, 438–39 (6th Cir. 2008)).

With respect to the Poultons' claims under § 1692e, SLS argues that the Poultons have

13

failed to identify any material misrepresentations in their complaint. However, the complaint clearly alleges that SLS "falsely represent[ed]" that the Poultons owed an undisclosed balloon payment upon the maturity of the Loan. (Doc. No. 1 ¶ 118.) They also allege that SLS has "further issued notices of its intent to foreclose to the Poultons, threatening foreclosure if the Poultons fail to pay for the improper, undisclosed balloon payment." (*Id*. ¶ 63.) Additionally, the Poultons maintain that these improper statements have caused them to employ counsel and, thus, incur legal fees associated with attempting to correct this inappropriate balance. (*Id*. ¶¶ 64, 121.)

SLS suggests that this pleading is not sufficient because the Poultons "still have yet to point to any statement identifying where, when, or how SLS made a material misrepresentation." (Doc. No. 11, at 7.) While such specificity is required for fraud claims, pursuant to Fed. R. Civ. P. 9(b), Rule 8(a) does not demand the same level of detail. *See Twombly*, 550 U.S. at 570 (rejecting Rule 9(b)'s heightened pleading requirement for non-fraud-based claim, finding Rule 8(a) only requires enough factual detail to state a claim for relief). SLS has not cited governing authority (or even argued) that FDCPA claims must comply with Rule 9(b)'s heightened pleading requirements. Further, the Court's own research has revealed a split in courts throughout the country relative to this issue. *See Lord v. Senex Law, P.C.*, No. 7:20-cv-541, 2021 WL 3622148, at *9–10 (W.D. Va. Aug. 16, 2021) (noting split in courts and declining to resolve the issue); *Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 923–24 (E.D. Va. 2006) (collecting cases with majority refusing to apply Rule 9(b) to FDCPA claims). The Court finds that it need not resolve this unbriefed issue because the complaint satisfies Rule 9(b)'s heightened pleading requirements. Specifically, the complaint alleges that many of the asserted misrepresentations were made in the context of SLS' response to NOE #1, which was sent on December 6, 2021, and referenced in the

complaint and appended thereto; thus answering the who, what, and where of Rule 9(b)'s pleading requirements. (*See* Doc. No. 1 ¶¶ 53–55, 118.) *See Jackson v. Segwick Claims Mgmt. Servs., Inc.*, 699 F.3d 466, 476 (6th Cir. 2012) (quotation marks and citation omitted). Even under Rule 9(b)'s heightened pleading requirement, the Poultons' FDCPA claim under § 1692e is pled with sufficient particularity, and dismissal is not warranted on this basis.[6]

SLS argues further that the FDCPA claim is time-barred. (Doc. No. 6, at 13–14.) An action under the FDCPA must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see Rotkiske v. Klemm*, -- U.S. --, 140 S. Ct. 355, 358, 205 L. Ed. 2d 291 (2019) (holding that the statute of limitation in § 1692k begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation was discovered). Citing an allegation in the complaint wherein the Poultons aver that, had "SLS provided a full accounting of the Loan, as required through RFI #1, the Polulsons and their counsel may have been more readily able to determine why there was an unpaid principal," SLS suggests that what the Poultons are really attacking is the 2009 Modification and not SLS' responses to their inquiries in 2021. (Doc. No. 6, at 13–14 (citing Doc. No. 1 ¶ 82).) It is entirely possible that discovery will bear out that the Poultons' real complaint lies with the terms of the 2009 Modification and not SLS' servicing of the Loan. It may also be the case that certain actions of SLS that the Poultons are

---

[6] SLS raises similar challenges to the Poultons' allegations under § 1692f, suggesting that the complaint fails to allege sufficient factual content to establish how it created an alleged balloon payment or manufactured a default. (Doc. No. 6, at 13.) Yet, the complaint asserts that SLS improperly serviced the loan by misapplying payments, or otherwise affecting the amortization of the Loan to establish an unwarranted balloon payment. (Doc. No. 1 ¶¶ 39–40, 97.) Additionally, the Poultons allege that SLS threatened to foreclose on their property. (*Id.* ¶¶ 118–19.) A threat to take action that cannot be legally taken constitutes a violation of §§ 1692e(5) and 1692e(6). *See Obduskey v. McCarthy & Holthus LLP*, --U.S.--, 139 S. Ct. 1029, 1038, 203 L. Ed. 2d 390 (2019) ("[W]e think it at least plausible that 'threatening' to foreclose on a consumer's home without having legal entitlement to do so is the kind of 'nonjudicial action' . . . prohibited by [§ 1692f(6)]."). While discovery may not support these allegations, they are sufficient to satisfy the final prong of a claim under § 1692f of the FDCPA.

challenging occurred more than a year before the action was brought. Nevertheless, viewing the allegations in the complaint in the light most favorable to the Poultons—as it must on a Rule 12(b)(6) motion—the Court finds that the Poultons have alleged violations of the FDCPA that occurred within one year of filing their action in federal court.[7] *See also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (noting that statute of limitations is an affirmative defense, and generally, a plaintiff "need not plead the lack of affirmative defenses to state a valid claim" (citations omitted)).

### D. Count Four: the RMLA

Count Four raises a state law claim under the RMLA, relying on many of the same allegations of wrong-doing offered in support of Count Three's FDCPA claim. (*See* Doc. No. 1 ¶¶ 126–38.) The RMLA states that an entity covered under the Act cannot make false or misleading statements of material facts or false promises regarding a material fact. Ohio Rev. Code § 1322.40(B). The statute also prohibits a covered entity from engaging in "conduct that constitutes improper, fraudulent, or dishonest dealings[.]" § 1322.40(C).

---

[7] SLS also attacks the FDCPA claim on the ground that it fails to allege legally cognizable injuries and, therefore, robs the Poultons of standing. (*See* Doc. No. 6, at 14–15.) An FDCPA plaintiff must "point to some harm other than the fact of 'a bare procedural violation.'" *Hagy v. Demers & Adams*, 882 F.3d 616, 621 (6th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, --U.S.--, 136 S. Ct. 1540, 1550, 194 L. Ed. 2d 635 (2016)). Here, the complaint alleges that the Poultons have suffered "[u]nwarranted harm to their credit rating," and the imposition of improper fees. (Doc. No. 1 ¶ 64(b)-(c).) These damages are sufficiently concrete and particularized to satisfy the damages requirement. Additionally, the Poultons allege that SLS' action have caused "[s]evere emotional distress" driven by the fear that they will lose their home in a foreclosure. (*Id.* ¶ 64(d).) It is true that a generalized fear of foreclosure is insufficient to establish a concrete injury under the FDCPA. *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861–65 (6th Cir. 2020) (finding a debtor's mere feeling of anxiety is not enough to constitute a concrete injury). Here, however, the complaint specifically alleges that SLS threatened the Poultons with foreclosure. (Doc. No. 1 ¶ 63.) Such an allegation, if proven at trial, would establish a concrete injury traceable to SLS's conduct. *See, e.g. Morton v. O'Brien*, No. 2:18-cv-445, 2022 WL 969554, at *3 (S.D. Ohio Mar. 31, 2022) (distinguishing *Buchholz* and finding mental distress caused by mortgage servicer's letters and statements over the phone threatening foreclosure constitutes an injury that was "well within the type recognized by courts as sufficiently concrete to satisfy the standing requirement" for a FDCPA claim (collecting cases)).

SLS raises many of the same pleading arguments it raised in support of dismissal of the Poultons' FDCPA claim. For the same reasons discussed in the prior section, the Court finds that the allegations state a cause of action under the RMLA. *See Mulkey v. RoundPoint Mortg. Serv. Corp.*, No. 1:21-cv-1058, 2021 WL 5804575, at *4 (N.D. Ohio Dec. 7, 2021) (noting that RMLA claims require the pleading of false or misleading statements of material facts or other prohibited actions and a cognizable, actual injury resulting from the violation).

SLS also argues that the RMLA claim fails because the Loan was originated prior to March 23, 2018, the effective date of the Act. Citing Ohio statutory law providing that "[a] statute is presumed to be prospective in its operation unless expressly made retroactive[,]" SLS insists that the provisions of the RMLA do not apply, and Count Four must be dismissed for this reason alone. (Doc. No. 6, at 15–16 (quoting Ohio Rev. Code § 1.48).) In support, SLS cites guidance from the Ohio Department of Commerce which states:

> Any loans made prior to March 23, 2018, must follow the law in effect at the time the loan was originated. In other words, all recordkeeping rules, statutory provisions and administrative rules that were in place at that time will apply to any business activities up until that date and remain applicable to each loan until the loan and the associated recordkeeping timeframe expire.

(Doc. No. 6-3 (Ohio Dep't of Commerce, Guidance on H.B. 199), at 5 ("Guidance").)

The Poultons respond by insisting that "[w]hen the Loan originated has no bearing on whether a mortgage servicer violated the RMLA." (Doc. No. 8, at 18.) They observe that, on December 19, 2018, then-Governor Kasich signed into law House Bill 489 to broaden the scope of the RMLA to apply to mortgage servicers. (*Id*. at 18–19.) *See Becker*, 583 F. Supp. 3d at 1105 (holding that amendments to the RMLA apply to mortgage servicers). According to the Poultons, the Guidance did not address the question of whether the RMLA, as amended, applies to the

business activities of a mortgage servicer after March 23, 2018, because the Guidance was issued before mortgage servicers were made subject to the Act.[8] (Doc. No. 8, at 19 ("It is unclear how the Guidance applies to mortgage servicers when the statute was not amended to apply to mortgage servicers until months later.").)

While the Loan and the Modification were both entered before the effective date of the RMLA, as amended, the Poultons are purportedly challenging SLS' actions as a mortgage servicer *after* the enactment of the Act. There is nothing in the language of the statute that would suggest that alleged "improper, fraudulent, or dishonest dealings" occurring after the effective date of the RMLA fall outside the protection of the Act. *See, e.g., Becker*, 583 F. Supp. 3d at 1105 (without deciding the issue of retroactivity, refusing to dismiss RMLA claim alleging false or misleading statements by mortgage servicer on loan that originated in 2015); *Hazelwood v. Bayview Loan Serv., LLC*, No. 1:20-cv-726, 2021 WL 664059, at *8–9 (S.D. Ohio Feb. 19, 2021) (similar result involving mortgage that originated in 2005), *report and recommendation adopted*, 2021 WL 1019936 (S.D. Ohio Mar. 17, 2021). Accordingly, Ohio Rev. Code § 1.48 is inapplicable, and the RMLA is not subject to dismissal on this ground.

## IV.  CONCLUSION

For the reasons stated above, SLS' motion to dismiss is DENIED in its entirety.

**IT IS SO ORDERED**.

Dated: February 27, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[8] The question referenced by SLS in the Guidance asked, "Once the new law goes into effect on March 23, 2018, what are my responsibilities under the prior laws?" (Doc. No. 6-3, at 5.)